IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| ROSEANNE AMARI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 5:20-cv-00050 |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| PHILLIP S. GRIFFIN, II and ) | United States District Judge |
| PHILLIP S. GRIFFIN, II, P.C., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Pending before the court is Phillip S. Griffin, II and Phillip S. Griffin, II, P.C.'s motion to dismiss Roseanne Amari's complaint. (Mot. to Dismiss, Dkt. No. 7.) The matter has been fully briefed; the court finds that no hearing is required; and the matter is ripe for resolution. For the reasons stated below, the court will grant in part and deny in part Griffin's motion to dismiss.

I.  BACKGROUND

On August 6, 1994 Roseanne Amari married Joseph Michael "Giuseppi" Amari. (Compl. 7, Dkt. No. 1.) In 2014, Giuseppi sought to end the marriage. (*Id.* at 10.) On November 21, 2014, Roseanne, represented by attorney Bradley G. Pollack, filed for divorce in the Frederick County Circuit Court. (Mot. to Dismiss 1–2.) One of Roseanne's primary concerns in the divorce proceedings was the "fair and equitable distribution of the parties' separate property and marital assets, including Anthony's Pizza," a pizza shop that the couple owned and operated together with other business associates. (Compl. 10.)

On January 27, 2016, Roseanne hired Phillip S. Griffin, II, an attorney practicing law with the firm Phillip S. Griffin, II, P.C., to represent her in the divorce proceedings. (*Id.* at 6.) On February 23, 2016, by court order, Griffin replaced Pollack as counsel for Roseanne. (Mot.

1

to Dismiss 4; Def.'s Ex. 4, Dkt. No. 7-1.) The same day, the court issued an order continuing the trial and declining to extend deadlines that had passed, including deadlines for discovery and expert testimony. (Mot. to Dismiss 5; Def.'s Ex. 5, Dkt. No. 7-1.)

On June 28, 2016, the Frederick County Circuit Court entered a final decree in the divorce action. (Compl. 6.) Roseanne claims that Griffin did nothing "to defend her or to prepare her case for trial" and that he "strong-armed [her] into taking a settlement that she strongly opposed." (*Id.* at 20.) Griffin claims that, despite the expiration of discovery deadlines, he conferred with an accountant and invoked other discovery tools, including subpoenas and an investigator, to prepare for trial. (Mot. to Dismiss 5.)

On August 12, 2020, Roseanne filed suit against Griffin and his law firm, alleging that Griffin committed legal malpractice and gross negligence in his representation of Roseanne. (*Id.* at 21, 23.) Roseanne claims, among other things, that Griffin failed to perform necessary discovery, engage necessary experts, and investigate Giuseppi's assets during the divorce proceedings. (*Id.* at 22.) Roseanne states that Griffin's legal malpractice cost her "actual damage and loss of her separate property, including her interest in Anthony's Pizza [], in the amount of $2,000,000." (*Id.* at 23.)

On October 26, 2020, Griffin and his firm filed a motion to dismiss for lack of jurisdiction and failure to state a claim upon which relief may be granted. (Mot. to Dismiss.) Griffin claims that this court lacks diversity jurisdiction because both plaintiff and defendants are domiciled in Virginia and the amount in controversy is insufficient. (*Id.* at 17–19.) In addition, Griffin argues that the legal malpractice claim is barred by collateral estoppel and the negligence claim is barred by the statute of limitations. (*Id.* at 24–33.)

## II.  DISCUSSION

### A.  Subject Matter Jurisdiction

"A federal district court has original diversity jurisdiction over civil actions when the amount in controversy exceeds $75,000 and is between citizens of different states*.*" *Turner v. Digital Broad. Corp.*, 894 F. Supp. 2d 748, 751 (W.D. Va. 2012) (citing 28 U.S.C. § 1332(a)(1)). "Section 1332 requires complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant."  *Id.* (quoting *Cent. W.Va. Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) (citing *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996))).  "The requisite citizenship is determined as of the date the complaint is filed, rather than some later date."  *Id.* (citing *Athena Auto., Inc. v. DiGregorio*, 166 F.3d 288, 290 (4th Cir. 1999) (citing *Freeport–McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991))).

The court has subject matter jurisdiction over this case because the plaintiff and defendants are diverse and the amount in controversy exceeds $75,000.

**1.  Diversity of Citizenship**

For the purposes of diversity jurisdiction, an individual is a citizen of the state in which he is domiciled.  *UDX, LLC v. Heavner*, 533 B.R. 511, 515 (M.D.N.C. 2015).  "Domicile requires physical presence, coupled with an intent to make the State a home."  *Id.* (quoting *Johnson v. Advance Am.*, 549 F.3d 932, 937 n.2 (4th Cir. 2008).  "Determining a party's intent requires an examination of the totality of the circumstances, including 'current residence, voting registration and voting practices, location of personal and real property; location of brokerage and bank accounts; memberships in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and automobile registration;

3

payment of taxes.'" *Id.* at 515–16 (quoting *Hanks v. Coan*, No. 1:99CV00119, 1999 WL 1938851, at *3 (M.D.N.C. Aug. 17, 1999) (quoting *Dyer v. Robinson*, 853 F. Supp. 169, 172 (D. Md. 1994))).

"The burden of persuasion for establishing diversity jurisdiction [rests] on the party asserting it. When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof." *Turner*, 894 F. Supp. 2d at 751 (quoting *Hertz Corp. v. Friend*, 559 U.S. 77 (2010)). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).[1]

Here, the parties dispute whether Roseanne is a citizen of Virginia or New Jersey, and thus, whether there is diversity between her and defendants, who are citizens of Virginia. (Compl. 4–6.) Griffin argues that Roseanne is a citizen of Virginia because his "investigation confirms [she] has a residence in the state, a driving license, a valid voter registration, [and] family in the state . . . ." (Mot. to Dismiss 14, 18.) Griffin provides documentation to show that Roseanne: (1) jointly owns a residential property in Gore, Virginia, and is jointly listed on the deed of trust for that property (Dkt. No. 7-1 at 159; 161–179); (2) was registered to vote in Virginia in 2010; (Dkt. No. 7-1 at 160); (3) held a Virginia driver's license as of September 1, 2018 (Dkt. No. 7-1 at 180); (4) is the joint grantee on a 2016 deed of gift for a parcel of land located in Frederick County, Virginia (Dkt. No. 7-1 at 181); and (5) is the joint grantee on a 2002

---

[1] Griffin argues that "Plaintiff 'should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" (Reply 4, Dkt. No. 13 (citing *Richmond, Fredericksburg & Potomac RR Co.*, 945 F.2d at 768).) Griffin states that here, the facts are in dispute and therefore, he seeks a hearing on the question of jurisdiction. However, there are enough undisputed jurisdictional facts to resolve this question without a hearing.

deed for another parcel of land in Frederick County, Virginia (Dkt. No. 7-1 at 183).

Roseanne argues that she is a citizen of New Jersey. She provides evidence that her current driver's license was issued on May 8, 2019, by the state of New Jersey. (Dkt. 11-1 at 1.) Roseanne's driver's license lists her address in New Jersey. (*Id.*) Roseanne also represents, without documentary evidence, that she is currently registered to vote in New Jersey, that she voted in New Jersey in the most recent election, that she resides in New Jersey, and that the property in Gore, Virginia, jointly titled her name is her mother's residence. (Dkt. No. 11 at 3 n.2.) Notably, Roseanne resided in New Jersey before she married Giuseppi, and the couple only moved to Virginia after their marriage. (Compl. 7–8.)

The court is persuaded that Roseanne is a citizen of New Jersey. Although certain facts are in dispute, there are enough undisputed facts to determine that she is a citizen of New Jersey. First, Roseanne's recent decision to change her driver's license from a Virginia license to a New Jersey license demonstrates her intent to remain in New Jersey. Second, documents support Roseanne's assertion that the property in Gore, Virginia, is not her residence, but rather her mother's residence. The deed of trust for the property lists both Roseanne and her mother, Carmela Innocenzi, as joint owners. Roseanne signed this deed of trust while physically present in New Jersey, and her mother signed the deed while present in Virginia. (Dkt. No. 7-1 at 176). The location of the parties when signing this document supports the notion that this is Roseanne's mother's home and Roseanne spends time physically present in New Jersey. The fact that Roseanne jointly owns other parcels of land in Virginia, which appear to have been gifted to her, does not necessitate a finding that she is a citizen of Virginia. Although the parties dispute whether Roseanne is registered to vote in Virginia or New Jersey, this fact is not essential to determining her citizenship. Finally, Roseanne represents that she resides in New

Jersey, and since she lived in New Jersey before her marriage, it is unsurprising that she decided to return and remain in New Jersey after her divorce. For these reasons, the court finds that Roseanne is a citizen of New Jersey and there is diversity of citizenship between the parties in this case.

**2.  Amount in Controversy**

In order to satisfy the requirements of diversity jurisdiction the amount in controversy must exceed $75,000. 28 U.S.C. § 1332(a)(1). "In most cases, the 'sum claimed by the plaintiff controls' the amount in controversy determination." *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)). "If the plaintiff claims a sum sufficient to satisfy the statutory requirement, a federal court may dismiss only if 'it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed.'" *Id.* (quoting *Red Cab Co.*, 303 U.S. at 289).

"Defendants, seeking dismissal of diversity actions for lack of a sufficient amount in controversy, must therefore shoulder a heavy burden." *Id.* "They must show 'the legal impossibility of recovery' to be 'so certain as virtually to negative the plaintiff's good faith in asserting the claim.'" *Id.* (quoting *Wiggins v. N. Am. Equitable Life Assurance Co.*, 644 F.2d 1014, 1017 (4th Cir. 1981)). "A mere dispute over the mathematical accuracy of a plaintiff's damages calculation does not constitute such a showing." *Id.* (citing *McDonald v. Patton*, 240 F.2d 424, 425 (4th Cir. 1957) (noting that plaintiffs may secure federal jurisdiction even when "it is apparent on the face of the claim" that the claim to the requisite amount is subject to a "valid defense").

Here, Roseanne seeks compensatory damages in the amount of $2,000,000 and punitive damages in the amount of $350,000. (Compl. 25.) This exceeds the statutory amount in

6

controversy requirement. Defendants claim that Roseanne is barred from collecting any damages because she signed a contract prohibiting the collection of damages. (Mot. to Dismiss 21.) However, defendants do not cite any portion of the attorney-client contract for legal services that prohibits Roseanne from suing to recover damages for legal malpractice. Defendants further argue that Roseanne had no interest in Anthony's Pizza, and therefore the amount she could recover must be below $2,000,000. This type of dispute about the accuracy of plaintiff's damages calculation does not show by a legal certainty that it is impossible plaintiff could recover the requested amount. For these reasons, the plaintiff has sufficiently pled an amount in controversy over $75,000 and the court has diversity jurisdiction over this matter.

## B. Count I – Legal Malpractice

Griffin argues that Count I, Roseanne's claim for legal malpractice, is barred by collateral estoppel. (Dkt. No. 7 at 24–25.) Griffin claims that because Roseanne signed the divorce decree and the property settlement agreement during the divorce proceedings, issue preclusion bars her from bringing a legal malpractice claim. (*Id.* at 26.)

"Under *res judicata* principles, a prior judgment between the same parties can preclude subsequent litigation on those matters actually and necessarily resolved in the first adjudication." *Orca Yachts, L.L.C. v. Mollicam, Inc.*, 287 F.3d 316, 318 (4th Cir. 2002) (citing *In re Varat Enters., Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996)). "The doctrine of *res judicata* encompasses two concepts: 1) claim preclusion and 2) issue preclusion, or collateral estoppel." *Id.* (citing *Varat,* 81 F.3d at 1315 (citing *Allen v. McCurry,* 449 U.S. 90, 94 (1980))). "[I]ssue preclusion . . . applies when the later litigation arises from a different cause of action between the same parties." *Id.* (citing *Varat,* 81 F.3d at 1315). "Issue preclusion operates to bar subsequent litigation of those legal and factual issues common to both actions that were 'actually and

7

necessarily determined by a court of competent jurisdiction in the first litigation.'" *Id.* (citing *Varat,* 81 F.3d at 1315 (quoting *Montana v. United States,* 440 U.S. 147, 153 (1979))). "Issues are not 'actually litigated' for collateral estoppel purposes if they merely could have been litigated and determined in the prior action, but actually were not. *In re Schriver*, 218 B.R. 797, 806 (E.D. Va. 1998) (citing Restatement (Second) of Judgments § 27 cmt. e (1980)).

"Under Virginia law, a party invoking the doctrine of collateral estoppel bears the burden of establishing the following five elements: (1) that the parties to the two proceedings are 'the same or in privity'; (2) that the prior proceeding 'resulted in a valid and final judgment against the party against whom preclusion is sought or his privy'; (3) that the factual issue to be precluded was 'actually litigated in the prior proceeding'; (4) that the factual issue to be precluded was 'essential to the judgment in the prior proceeding'; and (5) that there was 'mutuality, that is, a party is generally prevented from invoking the preclusive force of a judgment unless that party would have been bound had the prior litigation of the issue reached the opposite result.'" *Lewis v. Long*, 521 B.R. 745, 748–49 (W.D. Va. 2014) (citing *In re Duncan*, 448 F.3d 725, 728 (4th Cir. 2006) (quoting *TransDulles Center, Inc. v. Sharma*, 252 Va. 20 (1996))).

Here, the issue of whether Griffin committed legal malpractice was not actually litigated in the divorce proceeding. Even if, as Griffin argues, the divorce decree Roseanne signed "waiv[ed] experts, discovery and other methods of scrutiny to reach an agreement . . . [and] forfeited any claim of fraud or deceit that she may have arguably had against her former husband," it does not follow that the decree also waived any claim of legal malpractice. (Dkt. No. 13 at 9.) Because neither the claim of legal malpractice nor gross negligence was litigated in the divorce proceedings, neither Count I nor Count II is barred by collateral estoppel.

## C. Count II - Gross Negligence

Griffin argues that Count II, Roseanne's claim of gross negligence, should be dismissed because the 2-year statute of limitations on that claim has expired. (Dkt. No. 7 at 32.) Roseanne argues that a 5-year statute of limitations applies to her claim for gross negligence; therefore, the statute of limitations has not expired. Irrespective of the statute of limitations, the court will dismiss Count II because it is duplicative of Count I.

Where a claim alleges the breach of a duty of care stemming from a professional services contract, the claim may be properly characterized as one for malpractice rather than negligence. In *Rahbar v. Law Office of Arquilla & Poe, PLC*, plaintiff sued her divorce attorney and his law firm alleging legal malpractice, negligence, and other claims. No. 118CV1475LMBMSN, 2019 WL 1575191, at *7 (E.D. Va. Apr. 11, 2019). The court held that plaintiff's tort claims, including the negligence claim, were precluded under Virginia law because the relationship between the plaintiff and defendant was contractual in nature. *Id.* at *8. Plaintiff had "hired the [defendants] to perform legal services related to her divorce proceedings, and a written retainer agreement governed that representation." *Id.* "By virtue of that relationship, defendants, as legal professionals, owed plaintiff certain duties of care." *Id.* (citing *O'Connell v. Bean*, 556 S.E.2d 741, 743 (Va. 2002) ("Implicit in a professional's contract of employment is the professional's duty to exercise the care of those ordinarily skilled in the business and to exercise a reasonable degree of care, skill, and dispatch in carrying out the business for which he is employed.")). "Although breaches of those duties of care are formally torts, the duties themselves 'arise under contract law,' and any malpractice claims stemming from them are funneled into breach-of-contract actions." *Id.* (quoting *Hewlette v. Hovis*, 318 F. Supp. 2d 332, 335-36 (E.D. Va. 2004); citing *Augusta Mut. Ins. Co. v. Mason*, 645 S.E.2d 290, 293–94 (Va. 2007)). "'[A] single act or occurrence can, in certain circumstances, support causes of action both for breach of contract and

9

for breach of a duty arising in tort'—but only where the 'duty tortuously or negligently breached [is] a common law duty, not one existing between the parties solely by virtue of the contract.'" *Id.* (quoting *Augusta Mut.*, 645 S.E.2d at 293–94 (quoting *Foreign Mission Bd. of the S. Baptist Convention v. Wade*, 409 S.E.2d 144, 148 (Va. 1991))). The *Rahbar* court concluded that any separately pleaded tort claims were duplicative of plaintiff's legal malpractice claim and those claims were dismissed. *Id.*

Here, Roseanne's gross negligence claim is rooted in contract and is duplicative of her legal malpractice claim. The relationship between Roseanne and Griffin was contractual. Roseanne hired Griffin to represent her in her divorce proceedings and this relationship was governed by a written contract for legal services. (Dkt. No. 7-1 at 9–11.) Implicit in this contract, Griffin owed Roseanne a duty to exercise the care of an ordinarily skilled attorney in representing her in divorce proceedings. Roseanne does not argue that Griffin breached some common law duty, but rather that he breached his duty of care stemming from their contract for legal services. (Compl. 23.) Since the only duties of care implicated by this gross negligence claim arise out of Griffin's professional obligations to Roseanne, any alleged violations of those duties must be analyzed through the lens of a malpractice action. Accordingly, Roseanne's separately pleaded gross negligence claim is duplicative of her legal malpractice claim and must be dismissed.

### III.  CONCLUSION

For the aforementioned reasons, the court will enter an order granting in part and denying in part defendants' motion to dismiss (Dkt. No. 7). The court will grant the motion to dismiss

regarding Count II, and deny the motion to dismiss regarding Count I.

Entered: January 27, 2021.

/s/ Elizabeth K. Dillon

Elizabeth K. Dillon
United States District Judge